# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| CARL R. HARRIS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No.: |
| ) | |
| JTEKT AUTOMOTIVE TENNESSEE – ) | |
| MORRISTOWN, INC. ) | JURY DEMANDED |
| ) | |
| Defendant. ) | |

## COMPLAINT

Comes now the Plaintiff Carl R. Harris, by and through counsel, and sues Defendant JTEKT Automotive Tennessee – Morristown ("Defendant"), Inc., as follows:

## JURISDICTION AND VENUE

1. This case arises under the Americans with Disabilities Act Amendments Act of 2008 ("ADA"), as amended.

2. Plaintiff is an adult citizen and resident of Cocke County, Tennessee.

3. Defendant is a Delaware corporation with a facility and significant business operations in Morristown, Hamblen County, Tennessee.

4. This Court has subject matter jurisdiction pursuant to, inter alia, 42 U.S.C. § 12117 and 28 U.S.C. § 1331.

5. Venue lies in this judicial district pursuant to 28 U.S.C. § 1391 and 42 U.S.C. 2000e-5(f)(3).

6. Defendant employs more than fifteen (15) employees and is a covered employer under the ADA.

7. Mr. Harris timely filed a charge of discrimination with the Equal Employment Opportunity Commission based on the same general conduct set forth herein. He received a Notice of Rights on June 29, 2021, and timely files suit within the prescribed period.

**FACTUAL BASIS**

8. Defendant is in the business of engineering and manufacturing steering systems, driveline components, and pumps for the automotive industry.

9. Mr. Harris began working for Defendant on November 9, 2015, as a manufacturing technician A ("A Tech").

10. As a young man, Mr. Harris began to suffer seizures. This condition is well documented by Mr. Harris' doctors and has persisted throughout his life.

11. Mr. Harris' seizures were controlled for approximately ten years following a brain surgery in or around 2009, and during that time, Mr. Harris did not suffer any seizures.

12. While working for Defendant, Mr. Harris was required to work strenuous hours, including seven-day workweeks, mandatory overtime, ten (10) to twelve (12) hour workdays, and workweeks which often exceeded seventy (70) hours.

13. Such laborious working hours increased Mr. Harris' stress and reduced the amount of sleep he was able to get on a consistent basis.

14. As a result of the increased stress and lack of sleep, Mr. Harris began experiencing seizures again in the Fall of 2019.

15. During that time, Mr. Harris suffered three (3) to four (4) episodes during the span of a few weeks, including one such seizure on October 13, 2019, which occurred while Mr. Harris was at work. This specific incident resulted in Mr. Harris being hospitalized.

16. Mr. Harris returned to work in November 2019 with no restrictions.

17. Then, the following year, on October 17, 2020, Mr. Harris, once again, suffered a seizure while at work, this time refusing medical treatment for fear of financial impacts.

18. As a result of this incident, Mr. Harris opted to take FMLA-protected leave from October 18, 2020, to January 13, 2021.

19. Prior to the expiration of his leave, Mr. Harris and Defendant began the return-to-work process. As part of this process, Mr. Harris' neurologist, Dr. Fredric Radoff, communicated with Defendant on November 12, 2020, December 4, 2020, and January 7, 2020.

20. In each such communication, Dr. Radoff informed Defendant that Mr. Harris' stress caused from work could be triggering more seizures for him and that minimizing work stress could be beneficial for Mr. Harris.

21. Specifically, in the November 12, 2020 letter, Dr. Radoff informed Defendant that other than the stress from work being minimized, Mr. Harris could return to work at his usual occupation. Additionally, In the December 4, 2020 letter, Dr. Radoff informed Defendant that there were no physical limitations for Mr. Harris, that he needs to work a maximum of 65 hours per week, and that he could return to his usual work on December 13, 2020.

22. In the January 7, 2021 communication, Dr. Radoff responded to Defendant's inquiries by informing Defendant that the anticonvulsant medications that Mr. Harris was taking were not new to Mr. Harris, that he was taking these medications when he passed out on the job, and that these medications can be used while operating industrial equipment, but if certain side effects are present then it would not be safe for him to operate industrial equipment.

23. Mr. Harris had been using such medication for a number of years and had not experienced any of the side-effects indicated by Dr. Radoff which would make it unsafe for Mr. Harris to operate industrial equipment.

24. Furthermore, Dr. Radoff informed Defendant that the stressors that needed to be avoided for Mr. Harris included fatigue, nervousness, and sudden noises.

25. Additionally, Mr. Harris submitted a reasonable accommodation request form on December 2, 2020, on which he requested as an accommodation that his hours be more structured and/or that when overtime is required that he be given as much advanced notice as possible.

26. Mr. Harris was terminated by Defendant effective January 28, 2021.

27. Defendant's stated reason for Mr. Harris' termination, as stated in the Separation Notice presented to Mr. Harris by Defendant, was that this was a "medical separation."

28. This termination came despite Mr. Harris providing medical clearances requested by Defendant and attempting to return to work, and was carried out due to Mr. Harris's disability.

## CAUSES OF ACTION

### Americans with Disabilities Act

29. The averments of paragraphs 1 through 28 are incorporated into this section by reference.

30. The ADA forbids employers from discriminating against an employee because of his actual disability, his record of having an actual disability, or because the employer regards the employee as having an impairment. 42 U.S.C. § 12112 (2020). The ADA defines a disability as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A) (2020).

31. The ADA also forbids employers from retaliating against employees who seek the ADA's benefits or protections, necessarily including requesting reasonable accommodations and complaining when the employer violates those accommodations.

32. Mr. Harris has such a disability, as described above. This disability substantially limits several major life activities, including standing, climbing, driving, speaking, memory, working, and responsiveness.

33. Defendant had actual knowledge of Mr. Harris's disability through Mr. Harris's direct communications with Defendant regarding his seizure condition and request for a reasonable accommodation, as well as Mr. Harris's suffering multiple seizures while on the job.

34. Mr. Harris was able to perform the essential functions of his job with a reasonable accommodation, namely, advanced notice of required overtime and more structured work schedules. Indeed, Mr. Harris performed the job satisfactorily without any accommodations for many years from 2015 to the time of his termination in 2021.

35. Despite Mr. Harris being able to perform the essential functions of his job with reasonable accommodations, Defendant fired Mr. Harris.

36. The direct, proximate, and sole cause of Defendant's discriminatory acts, which ultimately cost Mr. Harris his job, was his disability.

**Retaliation**

37. Moreover, Mr. Harris attempted to return to work after his protected leave, but Defendant would not allow him to return to work until he provided a medical release which Mr. Harris promptly provided.

38. Additionally, during this time, Mr. Harris requested a reasonable accommodation, i.e., that his work hours be more structured and that he be given advanced notice of required overtime where possible.

39. Yet, Mr. Harris' attempts to obtain a reasonable accommodation and subsequently return to work were met by Defendant by summarily firing him after refusing to allow him to come back to work.

40. Defendant's actions were solely attributable to Mr. Harris' attempt to take advantage of protected activity.

41. The direct, proximate, and sole cause of Defendant's discriminatory acts, which ultimately cost Mr. Harris his job, was his disability.

## DAMAGES

42. As the direct and proximate result of Defendant's illegal actions, Mr. Harris has suffered and continues to suffer tremendous harms and losses, including lost wages, lost benefits, lost retirement contributions, lost contributions to public benefit programs (e.g., Social Security and Medicare), emotional distress, humiliation, loss of enjoyment of life, legal costs, and job-search related expenses.

## PRAYER FOR RELIEF

Based on the foregoing, Plaintiff Carl R. Harris respectfully prays for the following relief:

43. A judgment that Defendant violated the ADA and that such violations were reckless and intentional;

44. That a jury decide all issues of fact;

45. All compensatory and non-pecuniary damages, as well as punitive damages, under the ADA;

46. Prospective relief consisting of reinstatement with applicable adjustments to salary and seniority, a permanent injunction prohibiting Defendant from engaging in further prohibited behavior against Mr. Harris, restoring his eligibility for FMLA, requiring Defendant to reasonably accommodate Mr. Harris's disability, and requiring Defendant to provide additional training regarding the laws implicated in this suit;

47. Additionally, or in the alternative to certain prospective relief, front pay;

48. Pre- and post-judgment interest;

49. Attorneys' fees, expert witness fees, and all costs; and

50. An award of such other legal and equitable relief to which Mr. Harris is entitled.

RESPECTFULLY SUBMITTED,

*s/ Jesse D. Nelson*
JESSE D. NELSON (BPR # 025602)
NELSON LAW GROUP, PLLC
10263 Kingston Pike
Knoxville, TN 37922
(865) 383-1053
jesse@NLGattorneys.com

*Attorneys for Plaintiff Carl R. Harris*